IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN NELSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:12-cv-818-L-BN |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Stephen Nelson seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision should be affirmed.

**Background**

Plaintiff alleges that he is disabled as a result of chronic back pain, heart problems, and mental impairment. After his application for disability and supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on July 13, 2010. At the time of the hearing, Plaintiff was fifty-seven years old. He attended junior college for one year and has past work experience as the owner/operator of a mobile home park, as the co-owner and manager of a car lot, and installing skylights in commercial buildings. Plaintiff has not engaged in substantial gainful activity since June 6, 2008.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that Plaintiff suffered from chronic lower back pain, the ALJ concluded that the severity of that impairment did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform his past relevant work as a trailer park manager and window installer.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two general grounds: (1) the ALJ failed to evaluate Plaintiff's mental impairments and (2) the assessment of Plaintiff's residual functional capacity is not supported by substantial evidence and results from reversible legal error.

The undersigned recommends that the hearing decision should be affirmed in all respects.

**Legal standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and

the Court does not try the issues *de novo*. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

>   4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.
>
>   5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial

evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where Plaintiff shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

**Analysis**

Plaintiff first contends that the ALJ's decision is erroneous because it failed to evaluate his alleged mental impairments and resulting functional limitations under the framework set forth in 20 C.F.R. § 416.920a. Plaintiff contends that, "[a]lthough

5

the undersigned recognizes that the evidence of record does not indicate that Plaintiff was treated with anti-psychotic medications with the VA through 2008, it is evident that Plaintiff suffers from anger issues, as well as antisocial tendencies." Dkt. No. 20-1 at 4.

If a claimant is complaining of mental impairment and the ALJ finds the impairment to be severe but does not meet or equal the listings in appendix 1, the ALJ must then conduct a residual functional assessment regarding the claimed mental impairment. *Waters v. Chater*, No. 94-20733, 1995 WL 535000, at *2 (5th Cir. Aug. 18, 1995); 20 C.F.R. §§ 202.1520(c)(3), 416.920a(c)(3) (setting forth criteria for assessing severity of mental impairments). The ALJ found that Plaintiff had undergone psychiatric evaluation and treatment in 2006. Administrative Record [Dkt. No. 16-2] at 18. The ALJ also found that Plaintiff testified that he had been on anti-depressant medication in 2009 but presented no objective medical evidence to support that claim. *Id.* at 19. The only severe impairment that the ALJ found was chronic lower back pain. *Id.* at 15. Therefore, the ALJ did not rate the degree of Plaintiff's functional limitation as the result of any alleged mental impairments.

At the outset, the Court notes that Plaintiff did not list a mental impairment in his original request for benefits, and it is unclear whether Plaintiff alleged that he suffered from mentally disabling impairments that prevented him from working. Administrative Record [Dkt. No. 16-6] at 183; *accord Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) ("At the outset, we note that appellant did not list a mental non-exertional impairment in his original request for benefits. Moreover, there is no

6

indication in the record that he ever requested a consultative examination."). Nevertheless, there are references to Plaintiff's mental conditions at various points throughout the record. The first was from an initial consultation with Dr. W. A. Hendrickse, a psychiatrist at the Veteran's Administration ("VA"), on October 18, 2006. Administrative Record [Dkt. No. 16-2] at 18; Administrative Record [Dkt. No. 16-7] at 298. Plaintiff told Dr. Hendrickse that he sought treatment because his wife insisted he speak to someone about his anger and that he did not want a full evaluation that day. Administrative Record [Dkt. No. 16-7] at 300. Dr. Hendrickse observed that Plaintiff was oriented, very jocular, and cooperative and that his motor activity, speech, flow of thought, memory, concentration, perceptions, affect, mood, and judgment were normal. *Id.* at 301. Dr. Hendrickse also noted that Plaintiff had no thoughts or plans of harm to himself or others and demonstrated no delusions. *Id.* Dr. Hendrickse's initial impression of Plaintiff's mental health status included possible alcohol abuse versus dependence, and, in conjunction with scheduling Plaintiff for a full evaluation, Dr. Hendrickse noted: "[rule out] intermittent explosive [disorder] vs [antisocial personality disorder] or adult antisocial behavior." *Id.*

Plaintiff returned to Dr. Hendrickse for a full mental health consultation on November 28, 2006. *Id.* at 291-98. Dr. Hendrickse's report contains no objective testing or examination findings. *Id.* Dr. Hendrickse noted that Plaintiff needed further screenings for occupational therapy, recreational therapy, and kinesiotherapy, and Plaintiff was found to have significant deficits in self-expression, self-concept, stress management, coping skills, organizing tasks, following instructions, and maintaining

7

self-control. *Id.* at 297. Dr. Hendrickse advised Plaintiff to seek further assessment and treatment for drug and alcohol addiction. *Id.* at 291.

On May 22, 2008, an advanced nurse practitioner at the VA assessed Plaintiff as having "anger issues secondary to legal charges." *Id.* at 246. During an August 29, 2008 medical evaluation, Plaintiff was noted to have a diagnosis of antisocial personality disorder. *Id.* at 236.

At his hearing on July 13, 2010, Plaintiff testified that he had been on anti-depressants prescribed by the VA for well over a year. Administrative Record [Dkt. No. 16-2] at 46. He also testified that the VA was evaluating him for depression prior to his incarceration, which began on or around August 13, 2009. *Id.*; Administrative Record [Dkt. No. 16-3] at 150.

The ALJ found that Plaintiff underwent psychiatric evaluation but, at most, was having some anger management issues. Administrative Record [Dkt. No. 16-2] at 18. The ALJ also found that there was no record of Plaintiff being placed on psychiatric medication or treated with anti-depressants. *Id.* at 18, 19.

Plaintiff argues that, because there was evidence he suffers from anger issues and anti-social tendencies, the ALJ was required to order psychological tests in order to develop the record. *See* Dkt. No. 20-1 at 4-5. The ALJ's duty to undertake a full inquiry "does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977). A consultative evaluation becomes "necessary" only when the

claimant presents evidence sufficient to raise a suspicion concerning mental impairment. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

While there are references to Plaintiff's anger management issues and an isolated and unexplained reference to anti-social personality disorder in the record, these references and isolated comments, when viewed within the record as a whole, were not sufficient to raise a suspicion that Plaintiff was mentally impaired. The ALJ properly considered the evidence of Plaintiff's alleged mental impairments and was not required to further develop the record or take the additional steps required by 20 C.F.R. § 416.920a(c)(3).

And, even if the ALJ did not fully develop the record as to Plaintiff's now-alleged mental impairment, this Court will reverse the ALJ's decision only if that failure prejudiced Plaintiff. *Jones*, 691 F.3d at 733. Even assuming that Plaintiff "has 'raised a suspicion' about the existence of mental limitation, he still must demonstrate that he was prejudiced by the ALJ's decision not to order a psychological consultation, which he failed to do." *Sinayi v. Astrue*, No. 3:11-cv-2770-D, 2012 WL 3234414, at *4 (N.D. Tex. Aug. 9, 2012). To establish prejudice, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728-29 (internal quotation marks omitted).

Plaintiff points to no evidence that, had the ALJ developed the record further, would have been adduced at the hearing and could have changed the result – that is, evidence of a mental impairment that could affect Plaintiff's ability to perform work activities. And he "presents no specific arguments regarding how a psychological

9

consultation would have produced evidence that might have altered the result." *Sinayi*, 2012 WL 3234414, at *4. Rather, Plaintiff asserts only that "the ALJ was required to develop the record in obtaining a mental health assessment from a DDS physician and a mental RFC determination from a State agency physician" and that, "[h]ad the ALJ properly done so, then he would have been able to properly evaluate Plaintiff's mental health impairments under the regulations, as required when there is evidence of a mental health condition that could affect Plaintiff's ability to perform work activities." Dkt. No. 20-1 at 4.

But Plaintiff came forward with no medical evidence of record of an actual diagnosis, treatment, or medication for depression, anti-personality disorder, or any other mental impairment or disorder, and on appeal Plaintiff does not even venture to articulate, much less demonstrate, any particular prejudice. This is not a case in which, for example, the claimant "has pointed to evidence that [his] depression and anxiety prevented [him] from maintaining full-time employment at [his] former jobs." *Williams v. Astrue*, No. 3:09-cv-103-D, 2010 WL 517590, at * 8 (N.D. Tex. Feb. 11, 2010). The Court "will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges." *Brock*, 84 F.3d at 729.

Plaintiff next contends that the ALJ's residual functional capacity finding was not supported by substantial evidence. The ALJ found that Plaintiff suffers from the severe impairment of chronic lower back pain. Administrative Record [Dkt. No. 16-2] at 15. The ALJ also found that Plaintiff has the physical residual functional capacity

to perform work at all exertional levels and without non-exertional limitations. *Id.* at 16. Plaintiff argues that this finding is not supported by substantial evidence because the ALJ found that Plaintiff's chronic lower back pain is a severe impairment but failed to impose postural limitations in the residual functional capacity finding despite evidence in the record to support such limitations. *See* Dkt. No. 20-1 at 5.

The ALJ stated that, in evaluating Plaintiff's functional limitations resulting from pain, he considered evidence in the record regarding the overt symptomatology typical of disabling pain, such as severe muscle weakness, atrophies, deformities, tenderness, marked spasm, joint stiffness, wasting of muscle, range of motion limitation, weight loss, and motor sensory deficits. Administrative Record [Dkt. No. 16-2] at 20. Plaintiff asserts that, "[b]ased on Plaintiff's imaging findings and the observation of Plaintiff's chiropractor at the VA, the evidence of record does not support a finding that Plaintiff is able to perform work at all exertional levels without any non-exertional limitations." Dkt. No. 20-1 at 7. The Court, however, finds that the ALJ properly evaluated the evidence in the record and that the assessment of Plaintiff's residual functional capacity is supported by substantial evidence. The ALJ's RFC determination is supported by the reported examination findings of record, and the diagnostic test results of record reveal only mild or slight degenerative disc disease or degenerative joint disease that does not preclude Plaintiff from sitting, standing, walking, moving about, handling objects, stooping, squatting, bending, or kneeling without limitation. And, here, "[t]he absence in the record of objective factors indicating the existence of severe pain, such as persistent significant limitations in the

range of motion, muscular atrophy, weight loss, or impairment of general nutrition justifies" the ALJ's conclusions. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987).

Plaintiff underwent diagnostic tests in June of 2008 that suggested degenerative disc disease, and his chiropractor at the VA assessed Plaintiff with degenerative disc disease in August of 2008. Administrative Record [Dkt. No. 16-7] at 234, 235. The chiropractor also noted that Plaintiff had mild decrease in flexion associated with low back pain, worse on the left than the right, low back pain on the left side with side bending, and mild crepitus during range of motion of the cervical spine. *Id.* at 252. Plaintiff had a stable gait with 5/5 muscle strength in all extremities. *Id.* at 248.

On July 15, 2008. Plaintiff had decreased range of motion of the trunk due to lower back pain, but the range of motion of his lower limbs was essentially normal. *Id.* at 278. There was no evidence of muscle atrophy, and straight leg raising was negative, as were the Fabere's test, hip hyperextention test, and facet loading test. *Id.* Muscle strength and sensation were within normal limits. *Id.* Plaintiff had a normal gait, could walk on toes and heels, and his station and coordination were stable. *Id.* at 278-79.

On August 8, 2008, Plaintiff had improved range of motion of the trunk with only mild decrease on flexion. Otherwise, range of motion testing of the trunk, cervical spine, and extremities was within normal limits. *Id.* at 269. Plaintiff demonstrated no muscle atrophy; straight leg raising was negative; spinal alignment was normal; and

muscle strength and reflexes were within normal limits. *Id.* Plaintiff had a normal gait, could walk on toes and heels, and his station and coordination were stable. *Id.*

Plaintiff had a consultative examination with Dr. Judith Graves on November 11, 2008. Dr. Graves found degenerative changes in Plaintiff's thoracolumbar spine and possibly some lower lumbar spinal stenosis at the lumbosacral level. *Id.* at 218, 222. Dr. Graves found no evidence of clubbing, cyanosis, or edema of the extremities, and extremity pulses were strong except for a slightly decreased dorsalis pedis pulse in the right lower extremity. *Id.* at 226. Plaintiff had tenderness at the midline to the left of the midline of the lower thoracic and upper lumber spine, but Dr. Graves noted no spasms. *Id.* at 226. Plaintiff could do sitting straight leg raises to 90 degrees and could bend more than 110 degrees at the waist without difficulty. *Id.* Plaintiff had normal range of motion of all extremities. *Id.* Plaintiff could heel, toe, and tandem walk, and could squat and arise without difficulty. *Id.* Dr. Graves tested Plaintiff's grip strength with two pound weights but did not otherwise test his lifting capabilities. *Id.* at 227. Dr. Graves concluded that Plaintiff "could sit, stand, walk, move about and transfer himself in and out [of] a chair without difficulty. He is able to handle objects without difficulty and has no evidence of upper body motor or sensory deficits. [Plaintiff] appears to be able to stoop, squat, bend and kneel without difficulty and has no evidence of lower body atrophy." *Id.* at 228.

Plaintiff specifically takes issue with Dr. Graves's not testing his lifting capabilities and argues that "it is unreasonable to determine that he retains the ability to perform any significant lifting with his degenerative disc disease and

13

probably lumbar spinal stenosis." Dkt. No. 20-1 at 7. But the ALJ's decision did not rest on Dr. Graves's evaluation alone, and this Court may not reweigh the evidence or substitute its judgment for the Commissioner's, however much Plaintiff may disagree with where the ALJ came out in weighing conflicting testimony and determining witnesses' – including Plaintiff's – credibility. *See Martinez*, 64 F.3d at 174; *Greenspan*, 38 F.3d at 237; *Hollis*, 837 F.2d at 1383.

The Court notes that, in his decision, the ALJ states that he gave due consideration and great weight to the opinions of the State agency physicians, who found that Plaintiff can perform work at all exertional levels without limitation. Administrative Record [Dkt. No. 16-2] at 19, 21-22. Plaintiff points to the fact that these two State agency medical consultants concluded that Plaintiff did not have a severe impairment. Administrative Record [Dkt. No. 16-7] at 228-29, 230. Plaintiff argues that the ALJ contradicts himself in finding that Plaintiff is more limited than the State agency physicians did and that, therefore, the ALJ cannot give substantial weight to their determinations.

This argument is not persuasive. The ALJ's finding that Plaintiff has a severe impairment is not necessarily inconsistent with his residual functional capacity finding that Plaintiff can work at all exertional levels and has no postural limitations, for which he relied upon the State agency physicians. *See Quigley v. Astrue*, No. 4:09-CV-4012-A, 2010 WL 5557500, at *8 (N.D. Tex. 2010) (concluding that "the ALJ's step two determination that Quigley had a severe combination of impairments including illiteracy and innumeracy is not necessarily inconsistent with his RFC determination

14

that Quigley had no communicative limitations"). The consideration of whether a claimant's impairments are severe at step two is a different inquiry than an ALJ's assessment of the claimant' residual functional capacity at step three. *See Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001); *Guiterrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits.").

**Recommendation**

The hearing decision is should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 30, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE